## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

BREEZE SMOKE, LLC,

          Plaintiff,

vs.

SPEED WHOLESALE, INC. and MKE
VAPE WHOLESALE LLC

          Defendants.

CASE NO.

JURY TRIAL
DEMANDED

## COMPLAINT

Plaintiff Breeze Smoke LLC ("Breeze Smoke"), by its undersigned attorneys Honigman LLP, for its Complaint against Speed Wholesale, Inc. ("Speed") and MKE Vape Wholesale LLC ("MKE") (MKE and Speed are referred to collectively herein as "Defendants") alleges as follows:

## NATURE OF THE CASE

1.    Breeze Smoke is a leading manufacturer, distributor, and seller of electronic nicotine delivery systems ("ENDS") and other vaping products throughout the United States. To protect its valuable brand, Breeze Smoke has applied for and obtained significant intellectual property protection, including but not limited to registered trademarks for the term "Breeze," in connection with its ENDS or vaping products. Unfortunately, due to the popularity and high quality of

Breeze Smoke's products, Breeze Smoke is often the target of infringers, forcing Breeze Smoke to bring numerous successful infringement claims against these infringers.

2.      Defendants are importers, distributors, wholesalers, and retailers who intentionally trade off Breeze Smoke's immense goodwill through use of the virtually identical mark "FREEZE BAR," which is depicted in virtually identical stylizations to Breeze Smoke's BREEZE trademarks. In addition, Defendants place the infringing mark on a product and packaging that so closely mirrors Breeze Smoke's BREEZE PRO packaging and product design that the differences are nearly indiscernible to the average buyer.

| Breeze Smoke's BREEZE PRO Product | Infringing "FREEZE BAR" Product |
|---|---|
|  | |

| Breeze Smoke's BREEZE PRO Product | Infringing "FREEZE BAR" Product |
|---|---|
|  | |

3.     With its FREEZE BAR electronic vaping devices, Defendants are engaged in willful infringement by intentionally displaying, marketing, advertising, promoting, distributing, offering to sell, and selling electronic vaping devices that copy Breeze Smoke's well-known trademarks and trade dress to consumers in Michigan and elsewhere. This infringement misleads consumers into believing there exists some affiliation, sponsorship, or connection between Breeze Smoke and Defendants when there is none.

4.     Thus, this is an action for willful and intentional trademark infringement, trade dress infringement, and unfair competition under the Lanham Act, 15 U.S.C. §1501, *et seq.*, and related state and common law claims, in which Breeze Smoke is seeking monetary damages for Defendants' willful infringement of Breeze Smoke's BREEZE trademarks and BREEZE PRO product design and packaging trade dress.

## PARTIES, JURISDICTION, AND VENUE

5.     Breeze Smoke is a limited liability company organized and existing under the laws of the State of Michigan, with its principal place of business at 1471 E. Nine Mile Rd., Unit 200, Hazel Park, MI 48030.

6.     Upon information and belief, Defendant Speed Wholesale, Inc. is a corporation registered in Illinois with its principal place of business at 400 N. York Road, Bensenville, IL 60106.

7.     Upon information and belief, Defendant MKE Vape Wholesale LLC is a limited liability company registered in Wisconsin with its principal place of business at 2302 W Clybourn Street, Milwaukee, WI 53233.

8.     Upon information and belief, Defendants are in the business of marketing, advertising, promoting, distributing, offering, and selling various goods and services related to electronic cigarettes, including disposable vaping devices.

9.     Personal jurisdiction over Defendants is appropriate because Defendants have engaged in substantial and systematic commercial activities with individuals and entities located in this State, have offered and/or sold goods and services within this State in the ordinary course of trade, and otherwise have constitutionally sufficient contacts with this State so as to make personal jurisdiction proper in this Court. Defendants supply the infringing products that are the subject of this action to sellers and consumers in Michigan and this District. Additionally, as described

further below, Defendants intentionally infringed on intellectual property rights that it knew were owned by Breeze Smoke. Defendants' actions were expressly aimed at this State and this District, where Breeze Smoke is located, causing harm in this State and this District.

10.     The Court has subject matter jurisdiction over this civil action pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338 in that this case arises under the Lanham Act (15 U.S.C. § 1051, *et seq*.), as well as 28 U.S.C. § 1367, because the state law claims are so related to the Lanham Act claims.

11.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)–(d). Venue is proper pursuant to 28 U.S.C. § 1391 (b)(2), (c)(2) and (d) because a substantial part of the events or omissions giving rise to Breeze Smoke's claims occurred in this District as Breeze Smoke and its intellectual property are located in this District and Breeze Smoke offers its BREEZE-branded goods and services in this District; and because Defendants committed acts of infringement in this District and are subject to personal jurisdiction in this District. Defendants expressly aimed their infringing activities at this District, where Breeze Smoke is located and where Defendants knew Breeze Smoke was likely to suffer harm.

## FACTUAL BACKGROUND

### *Breeze Smoke's BREEZE Marks*

12.    Breeze Smoke entered the vape market with a commitment to distinguish itself from other vape manufacturers by offering high-quality, products to consumers that are both state-of-the art and affordable.

13.    Fueled by a passion for the vaping industry and pioneering ways to help adults quit smoking as well as its overall desire to develop and put out top-quality products, Breeze Smoke was able, in short time, to become a leading player in the vape market.

14.    Breeze Smoke's wildly successful vaping business includes the manufacturing and selling of a variety of vaping products, including nicotine and nicotine-free disposable electronic vaping devices under the mark BREEZE and marks consisting of or containing the term "BREEZE" as the dominant and distinctive element.

15.    Disposable vaping products are an innovative part of the vaping and tobacco industry and very popular with consumers. Disposable vaping devices are relatively inexpensive and allow consumers to simply throw away the devices when they are finished rather than having to buy a more expensive device that requires additional purchases of cartridges.

16.     Breeze Smoke's disposable vaping products are closed-systems meaning that the consumer cannot add other liquids or cartridges to them. As a result, Breeze Smoke's nicotine-free disposable vaping products are not intended or reasonably expected to be used with or for the consumption of a tobacco product.

17.     For years and since well-prior to Defendants' use, Breeze Smoke has continuously used its BREEZE trademark and BREEZE formative trademarks in connection with electronic cigarettes, vaping products, including disposable vaping products and related products in Michigan and throughout the United States.

18.     By itself and through its predecessors in interest, Breeze Smoke has offered and sold certain vaping products in connection with its BREEZE and BREEZE formative marks since at least as early as April 2014.

19.     Examples showing Breeze Smoke's use of its BREEZE and BREEZE formative marks are shown below:















20.    In addition to its widespread and continuous use of the BREEZE and BREEZE formative trademarks, Breeze Smoke owns several United States Trademark Registrations for its BREEZE and BREEZE formative marks, with priority dating back to 2014, as set forth on the following chart:

|    | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|----|------|---------------|-------------------|-------|
| 1. | BREEZE | 7,561,752 | Filed: November 2, 2020<br><br>Registered: November 12, 2024<br><br>First Use Date: at least as early as April 2014 | Class 34: Electronic cigarette liquids comprised of flavoring in liquid form, other than essential oils, used to refill electronic cigarette cartridges; oral vaporizers for smokers; none of the foregoing containing or being for use with cannabis. |
| 2. | BREEZE PLUS | 6,770,534 | Filed: October 10, 2020<br><br>Registered: June 28, 2022<br><br>First Use Date: at least as early as March 1, 2020 | Class 34:  Disposable Electronic Cigarettes |

|   | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|------|---------------|-------------------|-------|
| 3. | BREEZE | 6,296,005 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25:  Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 4. | BRE⧓ZE | 6,296,004 | Filed: June 6, 2019<br><br>Registered: March 16, 2021<br><br>First Use Date: at least as early as April 6, 2020 | Class 25: Beanies; hats; hooded sweatshirts; long-sleeved shirts; shirts; sweaters; tank tops; graphic T-shirts; short-sleeved or long-sleeved T-shirts; sweat shirts; T-shirts; tee shirts; woolly hats |
| 5. | BREEZE SMOKE | 6,976,563 | Filed: June 20, 2020<br><br>Registered: February 14, 2023<br><br>First Use Date: at least as early as | Class 34:  Disposable Electronic Cigarettes |

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  | March 1, 2020 |  |
| 6. | BREEZE PRO | 6,992,438 | Filed: March 2, 2021<br><br>Registered: February 28, 2023<br><br>First Use Date: at least as early as August 18, 2021 | Class 34:  Disposable Electronic Cigarettes |
| 7. | BREEZE ODOR | 7,552,704 | Filed: September 3, 2021<br><br>Registered: Oct. 29, 2024<br><br>First Use Date: at least as early as March 20, 2024 | Class 4: Candles |

Copies of the foregoing United States Trademark Registrations and accompanying TSDR pages reflecting their current status are attached hereto as **Exhibit A** and incorporated herein by reference.

21.     Breeze Smoke also owns numerous pending United States Trademark Applications for its BREEZE and BREEZE formative marks, as set forth on the

below chart.

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| 8. | **BREEZE** — S M O K E — | 97/900,128 | Filed: April 21, 2023 | Class 34:  Disposable electronic cigarettes |
| 9. | **BREEZE**PRO | 98/531,707 | Filed: May 2, 2024 | Class 34: Disposable electronic cigarettes |
| 10. | BREEZE SMOKE | 97/697,754 | Filed: November 30, 2022 | Class 34: Smokable hemp products, namely, prerolled hemp cones sold empty and hemp wraps in the nature of hemp fiber rolling papers for smoking, all the foregoing containing or for exclusive use with hemp and CBD derived from hemp with a delta-9 tetrahydrocannabinol concentration of not more than 0.3 percent on a dry weight basis. |
| 11. | BREEZE PALM | 90/650,997 | Filed: April 16, 2021 \ \ Notice of Allowance Issued: November 1, 2022 | Class 34:  cigarette wraps, namely, papers to wrap tobacco in cigarette form; cigarette rolling papers; wraps in the nature of tobacco wraps, namely, papers to wrap tobacco in cigarette form; tobacco wraps, |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | namely, pre-rolled cones, sold empty; pre-rolled smoking cones, namely, pre-rolled cones, sold empty; rolling paper cones, namely, pre-rolled cones, sold empty |
| 12. | BREEZE PRIME | 97/839,842 | Filed: March 15, 2023 | Class 34:  Disposable Electronic Cigarettes |
| 13. | BREEZE | 90/256,675 | Filed: October 15, 2020 | Class 34:  Ashtrays for smokers; Lighters for smokers; Tobacco grinders |
| 14. | BREEZE | 90/292,552 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins<br><br>Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use<br><br>Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags<br><br>Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage |

| | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
| | | | | containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric

Class 34:  Cigarette rolling papers; Smokers' rolling trays |
| 15. | **BRE≋ZE** | 90/292,558 | Filed: November 2, 2020 | Class 14:  Ornamental lapel pins

Class 16:  Decals; Posters; Stickers; Plastic food storage bags for household use

Class 18:  Handbags; Wallets; Backpacks; Book bags; Sports bags; All-purpose reusable carrying bags

Class 21:  Containers for household use; Insulating sleeve holders for beverage cans; Plastic storage containers for domestic use; Plastic storage containers for household use; Portable coolers, non-electric |

|  | Mark | Reg./App. No. | Reg./App. Date(s) | Goods |
|---|---|---|---|---|
|  |  |  |  | Class 34: Ashtrays for smokers; Cigarette rolling papers; Smokers' rolling trays; Cigarette lighters; Tobacco grinders |
| 16. | BREEZE | 90/292,573 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 17. | BREEZE | 90/292,568 | Filed: November 2, 2020 | Class 7:  Vacuum packaging machines<br><br>Class 30:  Candy; Candy bars<br><br>Class 32:  Bottled water |
| 18. | BREEZE LIFE | 97/926,736 | Filed: May 9, 2023 | Class 34:  Battery performance monitors sold as a component of electronic disposable cigarettes |
| 19. | BREEZE ELITE | 98/146,073 | Filed: August 23, 2023 | Class 34: Electronic disposable cigarettes |

Copies of the foregoing applications, along with printouts of the accompanying TSDR pages reflecting their status, are attached hereto as **Exhibit B** and incorporated herein by reference.

22. Breeze Smoke also owns Michigan State Trademark Registrations 802,511,431 and 802,511,553 for the mark BREEZE. The Michigan BREEZE registrations were registered on August 13, 2020 and assert use in commerce since at least as early as February 4, 2020.

23. Breeze Smoke also owns Florida State Trademark Registrations T21000000916 and T21000000917 for the mark BREEZE LABS. The Florida BREEZE LABS registrations assert use in commerce since at least as early as December 31, 2014.

24. Collectively, Breeze Smoke's foregoing registrations and applications for its mark BREEZE and its BREEZE formative marks and its longstanding common law rights in the BREEZE and BREEZE formative marks shall be referred to herein as the "BREEZE Marks."

25. Collectively, the products and services in connection with which Breeze Smoke uses its BREEZE Marks, including the goods and services identified in the foregoing applications and registrations shall be referred to herein as the "BREEZE Goods and Services."

26.     The BREEZE Goods and Services sold in connection with the BREEZE Marks are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Michigan and the United States.

27.     Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE Marks in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high quality tobacco-related and vaping products.

28.     Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services.

29.     As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE Marks, the BREEZE Marks enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.  The BREEZE Marks represent substantial and valuable goodwill to Breeze Smoke's business and are intangible assets of substantial commercial value to Breeze Smoke.

### *Breeze Smoke's Enforcement of its Intellectual Property Rights*

30.    Given the commercial success associated with the BREEZE Goods and Services, Breeze Smoke has achieved a high level of popularity and brand recognition within the vaping community.

31.    Unfortunately, due to its success, the BREEZE Marks are often times the target of infringers that hope to confuse consumers into believing their products have some affiliation with Breeze Smoke, when they do not.

32.    Breeze Smoke has previously successfully enforced its BREEZE Marks several times, including in the following federal actions:

   a.    *Breeze Smoke LLC v. Jarjess, et. al*., Case No. 2:20-cv-13413-AJT-EAS (E.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendants).

   b.    *Select Distributors, LLC et. al., v. Breeze Smoke LLC, et. al*., Case No. 5:20-cv-12944-JEL-EAS (E.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendant).

   c.    *Breeze Smoke LLC v. Yatin Enterprises Inc., et. al*., Case No. 1:22-cv-01182 (W.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief against defendants).

d.     *Breeze Smoke LLC v. World Wholesale Inc. et. al*., Case No. 2:23-cv-13266-JJCG-DRG (E.D. Mich.) (Breeze Smoke successfully obtained permanent injunctive relief and an award of attorney fees against defendants).

### Breeze Smoke's Highly Distinctive BREEZE PRO Product Packaging Trade Dress and BREEZE PRO Product Design Trade Dress

33.    Since at least August 18, 2021, Breeze Smoke has used a highly distinctive product packaging trade dress in connection with its BREEZE PRO products.

34.    Breeze Smoke's BREEZE PRO product packaging trade dress is comprised of the overall look and feel of the BREEZE PRO product packaging and features, among other things, the following distinctive, non-functional elements:

a.     A rectangular clear plastic outer box ("rectangular box");

b.     A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

c.     On the front side of the cardboard label:

(1)    The wording "BREEZE," a word mark identifying the product, appears at the top in large white all capital letters;

(2)    A second line of text appears underneath the wording "BREEZE" in a smaller, less emphasized font;

(3)    The flavor of the vape is printed underneath the word mark and second line of text; and

19

> d.     The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and
>
> e.     The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.

(hereinafter, the "BREEZE PRO Packaging Trade Dress").

35.     Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Packaging Trade Dress appear below:



36.     The BREEZE PRO Packaging Trade Dress is highly inherently distinctive.

37.     The configuration of the BREEZE PRO Packaging Trade Dress, especially the wraparound label and rectangular box, is arbitrary.

38.    The BREEZE PRO Packaging Trade Dress has acquired secondary meaning in the minds of consumers.

39.    There have been several copycat products that use, without authorization, the BREEZE PRO Packaging Trade Dress, including Defendants' Infringing Product, as well as the NORTH, B-FREEZE, and VIP FREEZE products. Breeze Smoke is enforcing or has enforced its rights against each of these infringers. Examples of copycat packaging are attached hereto as **Exhibit C** and incorporated herein by reference.

40.    The BREEZE PRO Packaging Trade Dress is non-functional.

41.    Exclusive use of the BREEZE PRO Packaging Trade Dress would not put competitors at a disadvantage.

42.    There are endless varieties of vape packages. Examples of such varieties and are attached hereto as **Exhibit D** and incorporated herein by reference.

43.    Since at least August 18, 2021, Breeze Smoke has also marketed and sold its BREEZE PRO device utilizing a highly distinctive product design trade dress that consumers instantly recognize and associate exclusively with Breeze Smoke.

44.    Breeze Smoke's BREEZE PRO product design trade dress features, among other things, the following distinctive, non-functional elements:

      a.    a black body that resembles an rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

b.    the top end of the body comprises the mouthpiece that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front side;

c.    the front and back of the device exhibit a rounded rectangular silhouette;

d.    the bottom end of the body has a flat rectangular shaped surface having rounded corners;

e.    a rectangular label featuring a wavy design colored to match the flavor of the vape device;

f.    the wording "BREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom;

g.    an additional smaller white print element appears immediately above the word mark; and

h.    the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

(hereinafter, the "BREEZE PRO Product Design Trade Dress") collectively the BREEZE PRO Packaging Trade Dress and the BREEZE PRO Product Design Trade Dress is referred to herein as the "Breeze Smoke Trade Dress".

45.    Examples showing Breeze Smoke's use of its highly distinctive BREEZE PRO Product Design Trade Dress appear below:

 

46.     The BREEZE PRO Product Design Trade Dress is highly distinctive and has acquired secondary meaning in the minds of consumers.

47.     Third party retailers regularly advertise the BREEZE PRO Product Design and tout "the Breeze Pro's new elegant design" as a selling point. Examples of third party advertisements are attached hereto as **Exhibit E** and incorporated herein by reference.

48.    There have been several copycat products that use, without authorization, the BREEZE PRO Product Design Trade Dress, including Defendants' Infringing Product, as well as the NORTH, B-FREEZE, and VIP FREEZE products. Breeze Smoke is enforcing or has enforced its rights against each of these infringers. *See* **Exhibit C**.

49.    The BREEZE PRO Product Design Trade Dress is non-functional.

50.    Exclusive use of the BREEZE PRO Packaging Trade Dress would not put competitors at a disadvantage.

51.    There are endless varieties of vape designs. Examples of such varieties are attached hereto as **Exhibit F** and incorporated herein by reference.

52.    The BREEZE Goods and Services sold in connection with the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress are promoted, offered and sold through online retail platforms as well as at a substantial number of bricks-and-mortar locations throughout Michigan and the United States.

53.    Breeze Smoke has spent significant time, effort, and resources establishing its BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress in the minds of its customers and the public via advertisements and promotions—including through online advertising and promotion—as representative of Breeze Smoke's BREEZE Goods and Services, including but not limited to, its high quality tobacco-related and vaping products.

54.     Breeze Smoke has generated substantial revenue through its offer and sale of the BREEZE Goods and Services using the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress.

55.     As a result of Breeze Smoke's continuous use, extensive sales, advertising, and promotion of its BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress enjoy widespread recognition and an excellent reputation, and are recognized by the public as emanating exclusively from Breeze Smoke and representative of Breeze Smoke's high quality BREEZE Goods and Services.

56.     As a result of Breeze Smoke's efforts and commercial success in advertising, marketing and promoting the BREEZE Goods and Services, Breeze Smoke has generated substantial and valuable goodwill in the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress have become intangible assets of substantial commercial value to Breeze Smoke.

### *Defendants' Willful and Infringing Uses of the BREEZE Marks and Breeze Smoke Trade Dress*

57.     This is not the first legal encounter between Breeze Smoke and Defendant Speed Wholesale. The parties are currently engaged in a dispute in the Northern

District of Illinois involving another copycat BREEZE PRO product identified as NORTH.

58.     In or around August 2023, Breeze Smoke became aware that Defendant Speed had begun marketing, promoting, advertising, offering, distributing, and selling another disposable vaping products under the name "FREEZE BAR," which is a confusingly similar mark to the BREEZE Marks, while also using product packaging and a product design that are virtually identical to the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress (the "Infringing Products").

59.     Breeze Smoke also confirmed in or around September 2024, that Defendant MKE had also begun marketing, promoting, advertising, offering, distributing, and selling the Infringing Products.

Examples of the Infringing Products follow:









| BREEZE PRO Product | Infringing Product |
|---|---|



| BREEZE PRO Product | Infringing Product |
|---|---|



60.    Additional examples displaying Defendants' infringing uses are attached hereto as **Exhibit G** and incorporated herein by reference.

61.    The Infringing Product uses the mark "FREEZE BAR" which is virtually identical to Breeze Smoke's BREEZE Marks and is using virtually identical stylizations as the BREEZE Marks as seen below.



62.    The Infringing Product's product packaging is identical or virtually identical to the BREEZE PRO Packaging Trade Dress in its overall look and feel and includes at least the following overlapping elements:

    a.    A rectangular clear plastic outer box ("rectangular box");

    b.    A large, cardboard label that wraps around the rectangular box ("wraparound label"), wherein the back of the wraparound label extends the full length of the rectangular box and the front of the wraparound label extends only part of the length of the rectangular box, such that the top portion of the vaping device and the vertically aligned product branding is visible from the front and sides of the rectangular box;

    c.    On the front side of the cardboard label:

        (1)    The wording "FREEZE," a word mark identifying the product, appears at the top in large white all capital letters;

        (2)    A second line of text appears underneath the wording "FREEZE" in a smaller, less emphasized font;

        (3)    The flavor of the vape is printed underneath the word mark and second line of text; and

    d.    The nicotine warning is at the bottom of the front side of the cardboard label in a white box; and

    e.    The flavor of the product and the number of puffs are displayed on both sides of the wraparound label.

63.    The Infringing Product's product design is identical or virtually identical to the BREEZE PRO Product Design Trade Dress in its overall look and feel and includes at least the following overlapping elements:

    a.    a black body that resembles a rectangular cylinder having rounded corners, a flattened front and back sides, and a flat bottom;

    b.    the top end of the body comprises the mouthpiece, that is curved, has an opening for inhalation, narrows toward the opening, and has a concave region on the front;

    c.    the front and back exhibit a rounded rectangular silhouette;

    d.    the bottom end of the body has a flat rectangular shaped surface having rounded corners;

    e.    a rectangular label featuring a wavy design colored to match the flavor of the vape device;

    f.    the wording "FREEZE," a word mark identifying the product, printed in bold, white, all-capital typeface is vertically aligned on the label nearer to the mouthpiece than the bottom;

    g.    an additional smaller white print element appears immediately above the word mark; and

    h.    the vaping device flavor appears on the label near the bottom end of the vape device in a smaller, white, all-capital typeface vertically aligned on the label.

64.     In addition to all of the foregoing, the Infringing Products copy Breeze

Smoke's use of its mark on the bottom of its vape device, substituting the word

"FREEZE" for "BREEZE" but copying the same bold, all-capital imprinted typeface

that Breeze Smoke uses on its product, as shown below:

| **BREEZE PRO Product** | **Infringing Product** |
|---|---|
|  | |

65.     As shown in the above examples as well as the additional examples set

forth in **Exhibit G**, the Infringing Products deliberately copy every, or virtually

every, element of the BREEZE PRO Packaging Trade Dress and the BREEZE PRO

Product Design Trade Dress. Defendants deliberately copied these elements in a

concerted effort to trade off of the enormous goodwill that Breeze Smoke has

developed in connection with its BREEZE Goods and Services.

66.     Defendants are directly competing with Breeze Smoke in that they are

marketing, promoting, advertising, offering, distributing and selling virtually

identical disposable vaping products to the same customers or the same or similar

classes of customers as Breeze Smoke using a virtually identical mark featured in

virtually identical stylizations, product packaging, and product design, all of which are virtually identical to the BREEZE Marks, the BREEZE PRO Packaging Trade Dress, and the BREEZE PRO Product Design Trade Dress.

67.     Breeze Smoke has not licensed or otherwise authorized any Defendant to use either its highly valuable and well-established BREEZE Marks or the Breeze Smoke Trade Dress in any manner whatsoever.

68.     Upon information and belief, Defendants knew of Breeze Smoke's prior use of the BREEZE Marks, the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress, and were well aware of the goodwill and market value of the BREEZE Marks, the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress. Speed has offered, distributed and sold Breeze Smoke's BREEZE products for years and since well prior to any sales of the Infringing Products.

69.     Defendants intentionally chose to use and to trade off the goodwill associated with the BREEZE Marks, the BREEZE PRO Packaging Trade Dress and BREEZE PRO Product Design Trade Dress to suggest a false affiliation between Breeze Smoke and its goods and services on the one hand and Defendants and their goods and services on the other, or to deliberately mislead and confuse customers about the source of the parties' respective goods.

70.     Upon information and belief, Speed is demanding that customers buy the Infringing Products along with purchases of the BREEZE Goods and Services. A true and accurate screenshot reporting such communications is attached hereto as **Exhibit H** and incorporated herein by reference.

71.     Through their unauthorized and infringing uses of the Breeze Smoke Trade Dress, Defendants are deliberately and improperly capitalizing upon the goodwill that Breeze Smoke has built up in its BREEZE Marks and Breeze Smoke Trade Dress.

72.     Defendants' unauthorized, unlawful, and intentional use of the BREEZE Marks and Breeze Smoke Trade Dress has caused, and will continue to cause, a likelihood of confusion among consumers and potential consumers as to the source or origin of the Infringing Products and the sponsorship or endorsement of those goods and services by Breeze Smoke.

73.     Consumers that purchase vaping products do not exercise a high degree of care in making their purchases and therefore consumers are likely to confuse the Infringing Products with the Breeze Smoke Goods and Services.

74.     As a result of Defendants' intentional misappropriation of the BREEZE Marks and Breeze Smoke Trade Dress for use in connection with the Infringing Products, Defendants have caused, and will continue to cause, irreparable injury to

Breeze Smoke and have substantially damaged the value of the Breeze Smoke Trade Dress.

75.     Defendants have unjustly enriched themselves at Breeze Smoke's expense by displaying, marketing, advertising, promoting, distributing, offering to sell, and selling the Infringing Products.  Among the benefits that Defendants have gained from their unlawful and willful conduct are increased revenues from the sale of the Infringing Products.

76.     Breeze Smoke contacted Defendants by letter to provide Defendants notice of their unlawful infringement and to demand that Defendants cease any further marketing, offering, and selling of the Infringing Products and immediately remove such products from their stores and distribution channels.  Copies of these letters are attached hereto as **Exhibit I** and incorporated herein by reference. To date, Defendants have not responded to Breeze Smoke's letters,

77.     Defendants have not ceased selling or offering to sell the Infringing Products and continue to still offer and sell the Infringing Products or continue to actively procure the Infringing Products so they can continue to offer and sell the Infringing Products.

78.     With every day that passes, Defendants' sale of the Infringing Products compounds the irreparable harm to Breeze Smoke.

## COUNT I
## FEDERAL TRADEMARK INFRINGEMENT OF A REGISTERED MARK
### (15 U.S.C. § 1114)

79.    Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

80.    Breeze Smoke owns valid and enforceable rights in the BREEZE Marks in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the marks, and has possessed such rights at all times material hereto.

81.    Breeze Smoke owns several valid registrations for its BREEZE Marks. Specifically, Breeze Smoke owns federally registered trademark numbers 6,296,004; 6,296,005; and 7,561,762 for the mark BREEZE, 6,770,534 for the mark BREEZE PLUS, 6,976,563 for the mark BREEZE SMOKE, 6,992,438 for the mark BREEZE PRO, and 7,552,704 for the mark BREEZE ODOR.

82.    The foregoing registrations are prima facie evidence of the validity of the BREEZE Marks and of Breeze Smoke's ownership of the BREEZE Marks.

83.    Breeze Smoke's use of its BREEZE Marks in connection with tobacco-related and other vaping products predates any use by Defendants.

84.    Defendants knowingly and intentionally market, promote, advertise, distribute, offer to sell, and sell the Infringing Products.

85.     Defendants are selling and offering to sell the Infringing Products with full knowledge that consumers are likely to confuse them with the BREEZE Goods and Services.

86.     Defendants have been informed and are fully aware of Breeze Smoke's extensive prior use of the BREEZE Marks.

87.     Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE Marks other than on the BREEZE Goods and Services.

88.     Defendants' marketing, promotion, advertising, offering for sale, and selling of Infringing Products are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

89.     Such confusion, deception, or mistake likely to occur, as a direct result of Defendants' displaying, advertising, promoting, offering of sale and selling of the Infringing Products.

90.    Defendants' actions constitute trademark infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

91.    Though Defendants had prior knowledge of Breeze Smoke and its BREEZE Marks and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing Breeze Smoke's BREEZE Marks, they continue to intentionally infringe the BREEZE Marks.

92.    Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C § 1117(a).

93.    Defendants' conduct has occurred in interstate commerce and substantially impacts interstate commerce.

94.    As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE Marks, as well as harm to its valuable goodwill and reputation.

95.    Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

96.    An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT II
## FEDERAL TRADE DRESS INFRINGEMENT
### (15 U.S.C. § 1125(a))
### *BREEZE PRO Packaging Trade Dress*

97.   Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

98.   Breeze Smoke owns valid and enforceable rights in the BREEZE PRO Packaging Trade Dress in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and advertisement of the trade dress, and has possessed such rights at all times material hereto.

99.   Breeze Smoke's BREEZE PRO Packaging is highly inherently distinctive.

100.   Breeze Smoke's BREEZE PRO Packaging Trade Dress has acquired secondary meaning.

101.   Breeze Smoke's BREEZE PRO Packaging Trade Dress is non-functional.

102.   Breeze Smoke's use of its BREEZE PRO Packaging Trade Dress in connection with tobacco and other vaping products predates any use by the Defendants.

103.   Defendants knowingly and intentionally adopted the BREEZE PRO Packaging Trade Dress with full knowledge of Breeze Smoke's extensive prior use of the BREEZE PRO Packaging Trade Dress.

104.   Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE PRO Packaging Trade Dress other

than in connection with their authorized offer and sale of genuine BREEZE Goods and Services.

105. Defendants' marketing, promotion, advertising, offering for sale, and selling of Infringing Products bearing the BREEZE PRO Packaging Trade Dress are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

106. Such confusion, deception, or mistake is likely to occur, as a direct result of Defendants' displaying, advertising, promoting, offering of sale and selling of the Infringing Products.

107. Defendants' actions constitute trade dress infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(a).

108. Though Defendants had prior knowledge of Breeze Smoke and its BREEZE PRO Packaging Trade Dress and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing Breeze Smoke's

BREEZE PRO Packaging Trade Dress, they continue to intentionally infringe the BREEZE PRO Packaging Trade Dress.

109. Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C § 1117(a).

110. Defendants' conduct has occurred in interstate commerce and substantially impacts interstate commerce.

111. As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE PRO Packaging Trade Dress, as well as harm to its valuable goodwill and reputation.

112. Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

113. An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

**COUNT III**
**FEDERAL TRADE DRESS INFRINGEMENT**
**(15 U.S.C. § 1125(a))**
*BREEZE PRO Product Design Trade Dress*

114. Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

115. Breeze Smoke owns valid and enforceable rights in the BREEZE PRO Product Design Trade Dress in connection with the goods and services it offers and sells in connection therewith by virtue of its extensive use, promotion, and

advertisement of the trade dress, and has possessed such rights at all times material hereto.

116.   Breeze Smoke's BREEZE PRO Product Design Trade Dress is highly inherently distinctive.

117.   Breeze Smoke's BREEZE PRO Product Design Trade Dress has acquired secondary meaning.

118.   Breeze Smoke's BREEZE PRO Product Design Trade Dress is non-functional.

119.   Breeze Smoke's use of its BREEZE PRO Product Design Trade Dress in connection with tobacco and other vaping products predates any use by the Defendants.

120.   Defendants knowingly and intentionally adopted the BREEZE PRO Product Design Trade Dress with full knowledge of Breeze Smoke's extensive prior use of the BREEZE PRO Product Design Trade Dress.

121.   Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the BREEZE PRO Product Design Trade Dress other than in connection with their authorized offer and sale of genuine BREEZE Goods and Services.

122.   Defendants' marketing, promotion, advertising, offering for sale, and selling of Infringing Products bearing the BREEZE PRO Product Design Trade

Dress are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

123.   Such confusion, deception, or mistake is likely to occur, as a direct result of Defendants' displaying, advertising, promoting, offering of sale and selling of the Infringing Products.

124.   Defendants' actions constitute trade dress infringement in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1125(a).

125.   Though Defendants had prior knowledge of Breeze Smoke and its BREEZE PRO Product Design Trade Dress and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing Breeze Smoke's BREEZE PRO Product Design Trade Dress, they continue to intentionally infringe the BREEZE PRO Product Design Trade Dress.

126.   Defendants' actions described herein were knowing and intentional and thus render this case exceptional within the meaning of 15 U.S.C § 1117(a).

127.   Defendants' conduct has occurred in interstate commerce and substantially impacts interstate commerce.

128.   As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable BREEZE PRO Product Design Trade Dress, as well as harm to its valuable goodwill and reputation.

129.   Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

130.   An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

**COUNT IV**
**FEDERAL UNFAIR COMPETITION**
**AND FALSE DESIGNATION OF ORIGIN**
**(15 U.S.C. § 1125(a))**

131.   Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

132.   Breeze Smoke owns valid and enforceable rights in the Breeze Smoke Trade Dress and BREEZE Marks in connection with the goods and services it offers and sells and has possessed such rights at all times material hereto.

133.   Breeze Smoke's use of the Breeze Smoke Trade Dress and BREEZE Marks in connection with tobacco-related and other vaping products predates any use by Defendants.

134.   Defendants have knowingly and intentionally used and continue to use in commerce the Breeze Smoke Trade Dress and BREEZE Marks in connection with the vaping and tobacco-related goods by advertising, promoting, distributing, and selling the Infringing Products.

135.   Defendants knowingly and intentionally sell the Infringing Products with full knowledge of Breeze Smoke's extensive prior use of the Breeze Smoke Trade Dress and BREEZE Marks.

136.   Breeze Smoke has not authorized, licensed, or otherwise condoned or consented to Defendants' use of the Breeze Smoke Trade Dress and BREEZE Marks other than on the BREEZE Goods and Services.

137.   Defendants' marketing, promotion, advertising, distribution, offering for sale, and selling of the Infringing Products using the Breeze Smoke Trade Dress  are likely to confuse, mislead, and/or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of Defendants and Breeze Smoke, and/or Defendants' goods and services on the one hand and the BREEZE Goods and Services on the other, and is likely to cause such people to believe in error that Defendants' goods have been authorized, sponsored, approved, endorsed, or licensed by Breeze Smoke or that Defendants are in some way affiliated with Breeze Smoke.

138.   Such confusion, deception, or mistake is likely to occur, as a direct result of Defendants' use of the Breeze Smoke Trade Dress and BREEZE Marks in connection with the display, advertising, promotion, offer of sale, and sale of the Infringing Products.

139.   Defendants' actions constitute unfair competition, false designation of origin, false or misleading description of fact, and false or misleading representation of fact in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

140.   Though Defendants had prior knowledge of Breeze Smoke and its Breeze Smoke Trade Dress, BREEZE Marks, and the BREEZE Goods and Services, and received notice from Breeze Smoke that they were infringing the Breeze Smoke Trade Dress and BREEZE Marks, they continue to intentionally infringe the Breeze Smoke Trade Dress and BREEZE Marks.

141.   As a direct and proximate result of Defendants' conduct, Breeze Smoke has suffered damage to the valuable Breeze Smoke Trade Dress and BREEZE Marks, as well as harm to its valuable goodwill and reputation.

142.   Defendants' conduct described herein will continue to cause irreparable damage to Breeze Smoke and confuse the public unless enjoined by this Court.

143.   An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT VI
## COMMON LAW UNFAIR COMPETITION

144. Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

145. Defendants were aware of Breeze Smoke's prior use of the Breeze Smoke Trade Dress and BREEZE Marks and used Breeze Smoke Trade Dress and BREEZE Marks in disregard of Breeze Smoke's rights.

146. Defendants' actions have resulted in the misappropriation of, and trading upon, Breeze Smoke's valuable goodwill and business reputation at Breeze Smoke's expense and at no expense to Defendants. The effect of Defendants' misappropriation of the goodwill symbolized by the Breeze Smoke Trade Dress and BREEZE Marks is likely to unjustly enrich Defendants, damage Breeze Smoke, and confuse and/or deceive the public.

147. Defendants' actions constitute unfair competition with Breeze Smoke, which has caused and will continue to cause irreparable injury to Breeze Smoke's goodwill and reputation unless enjoined.

148. An award of money damages alone cannot fully compensate Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

## COUNT VII
## UNJUST ENRINCHMENT

149.  Breeze Smoke realleges and incorporates by reference the allegations contained in the preceding paragraphs as if fully set forth herein.

150.  By misappropriating Breeze Smoke's valuable goodwill and reputation through the improper use of the Breeze Smoke Trade Dress and BREEZE Marks Defendants have been unjustly enriched to the material detriment of Breeze Smoke.

151.  Defendants are realizing profit and will continue to realize a profit from their improper use of the Breeze Smoke Trade Dress and BREEZE Marks.

152.  Defendants' actions have directly and proximately caused irreparable harm to Breeze Smoke and its valuable goodwill and reputation, and will continue to harm Breeze Smoke unless enjoined.

153.  An award of money damages alone cannot fully Breeze Smoke for its injuries, and Breeze Smoke has no adequate remedy at law.

154.  Breeze Smoke is entitled to compensatory damages in the form of restitution and such other and further relief as the Court deems equitable and just.

## PRAYER FOR RELIEF

WHEREFORE, Breeze Smoke respectfully requests and prays that the Court:

A.    Enter judgment in Breeze Smoke's favor and against Defendants on all counts of the Complaint;

B.  Determine that Defendants willfully violated the Lanham Act, that Breeze Smoke has been damaged by such violations, and that Defendants are liable to Breeze Smoke for such violations;

C.  Determine that Defendants violated the Michigan Consumer Protection Act, that Breeze Smoke has been damaged by such violations, and that Defendants are liable to Breeze Smoke for such violations;

D.  Determine that Defendants have committed common law trademark infringement, that Breeze Smoke has been damaged by such infringement, and that Defendants are liable to Breeze Smoke for common law trademark infringement;

E.  Determine that this case is "exceptional" within the meaning of 15 U.S.C. § 1117(a);

F.  Under all claims for relief, issue a permanent injunction enjoining Defendants and any of their officers, employees, agents, successors and assigns, and all those in active concert and participation with Defendants, and each of them who receives notice directly or otherwise of such injunction:

1.  from using in any manner the BREEZE Marks and any variations thereof, or any other name, term, phrase, mark, design, device or symbol which so resembles or is similar to the BREEZE Marks so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

2.  from using in any manner the BREEZE PRO Packaging Trade Dress and any variations thereof, or any other product packaging which so resembles or is similar to the BREEZE PRO Packaging Trade Dress so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

3.  from using in any manner the BREEZE PRO Product Design Trade Dress and any variations thereof, or any other design or device which so resembles or is similar to the BREEZE PRO Product Design Trade Dress so as to be likely to cause confusion, mistake or deception as to source, origin, sponsorship, approval, affiliation or the like;

4.    from further unlawfully trading upon and misappropriating the goodwill and reputation of Breeze Smoke and competing unfairly with Breeze Smoke;

5.    from inducing, encouraging, aiding, abetting, or contributing to any of the aforesaid acts; and

6.    from making any false or misleading descriptions of fact or false or misleading representations of fact in their commercial advertising or promotion about the nature, characteristics, or qualities of their products or related commercial activities.

G.    Order Defendants to deliver up for destruction all products, labels, signs, prints, packages, wrappers, receptacles, advertisements, or other materials in their possession, custody or control, and in the possession, custody or control of those in active concert or participation or otherwise in privity with them, which display or contain the Breeze Smoke Trade Dress or BREEZE Marks, or any variations thereof, or which constitute and/or bear any other device, representation or statement in violation of the injunction herein requested by Breeze Smoke, and that Defendants be ordered to deliver up for destruction all means of making the same;

H.    Order Defendants to file with the Court and serve on Breeze Smoke, within thirty (30) days after service on any of them of such injunction (or such extended period as the Court may direct), a report in writing and under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction;

I.    In accordance with 15 U.S.C. § 1118, order Defendants to deliver to Breeze Smoke, at Defendants' expense, for destruction or other disposition, all products, including, without limitation, all labels, packaging, signs, prints, advertisements, promotional, and other materials, incorporating, bearing, or displaying a trademark confusingly similar to the aforementioned trademarks of Breeze Smoke or which otherwise violate 15 U.S.C. § 1125(a), in the possession, custody, or control of Defendants, as well as any reproduction, counterfeit, copy, or colorable imitation thereof, and all other materials or means of making the same;

J.    Order that Defendants account for and pay over to Breeze Smoke all

gains, profits, and advantages derived from their violation of 15 U.S.C. § 1125(a) and the common law, and also pay to Breeze Smoke the damages which Breeze Smoke has sustained by reason of such violations, together with legal interest from the date of accrual thereof;

K.    Because of the willful nature of said violations and pursuant to 15 U.S.C. § 1117(a), order that Defendants be required to pay over to Breeze Smoke enhanced damages;

L.    Order that Defendants be required to pay Breeze Smoke's reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1117(a);

M.    Award interest, including pre-judgment interest on the foregoing sums;

N.    Award Breeze Smoke an amount of money to undertake corrective advertising;

O.    Award Breeze Smoke punitive damages based on Defendants' willful and intentional conduct; and

P.    Grant Breeze Smoke any other relief as the Court deems necessary and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Breeze Smoke demands a trial by jury on all issues present in this civil action.

Dated**:** January 17, 2025

Respectfully submitted,


By: */s/ Jeffrey K. Lamb*_____
Jeffrey K. Lamb (P76738)
HONIGMAN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Telephone:  313-465-7000
Facsimile:  313-465-8000
jlamb@honigman.com

Mary A. Hyde (P83066)
HONIGMAN LLP
321 North Clark Street
Suite 500
Chicago, IL 60654-4769
Telephone:  312-701-9360
Facsimile:  312-701-9335
mzhy@honigman.com

Yafeez S. Fatabhoy (P83064)
Amanda M. Blackburn (P81687)
HONIGMAN LLP
315 East Eisenhower Parkway
Ann Arbor, MI 48108-3330
Telephone: 734-418-4217
Facsimile: 734-418-4218
yfatabhoy@honigman.com
ablackburn@honigman.com
*Attorneys for the Plaintiff*